UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>SANJIV KAKKAR,<br>Defendant. | Case No.   5:13-cr-00736-EJD-1<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**<br><br>Re: Dkt. No. 201 |

Before the Court is Defendant Sanjiv Kakkar's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence for wire fraud and making false statements to a bank. *See* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Mot."), Dkt. No. 201. On August 14, 2020, the Government filed its response to Defendant's motion. *See* United States' Response in Opposition to Petitioner's Motion to Vacate, Set Aside, or Correct ("Response"), Dkt. No. 230. Thereafter, on December 17, 2020, Defendant filed his reply. *See* Petitioner's Reply in Support of Motion to Vacate, Set Aside, or Correct ("Reply"), Dkt. No. 238. For the foregoing reasons, the Court **DENIES** Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**I.   BACKGROUND**

On June 2, 2016, a grand jury returned a Superseding Indictment charging Defendant with one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014 (Count One), and six counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Two through Seven). *See* Superseding Indictment ("SI") ¶¶ 14–17, Dkt. No. 70. The SI alleged that Defendant

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

1

1   owned and operated hotels in the Bay Area, including The Brookdale Inn and Spa in Boulder
2   Creek, California. SI ¶ 2.
3         The SI alleges that, in November 2008, Defendant refinanced a $4.5 million loan on The
4   Brookdale Inn with the State Bank of India (California) ("SBIC") and borrowed an extra $1.5
5   million from SBIC to renovate the property. SI ¶ 6. The SI alleged that Defendant submitted
6   altered tax returns to SBIC that falsely inflated the income generated by his hotels, and that
7   Defendant gave false information to an escrow company called Dixieline Builders Fund Control,
8   which managed the disbursement of loan funds for the renovation. SI ¶¶ 9–13.
9         The Government called twelve witnesses, who established the following facts. Defendant
10  came to the attention of federal law enforcement in August 2009, when a county fire official asked
11  the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to investigate a fire at The
12  Brookdale Inn. *See* Transcript of Trial Proceedings, Vol. 4 at 67. The ATF could not determine
13  the cause of the fire, but during its investigation, it examined the financial condition of the inn's
14  owner, *i.e.*, Defendant. *Id.* at 75–77. Defendant owned several properties in the area, including
15  The Abigail Hotel and the Executive Inn, and had loans for these properties with SBIC. *Id.* SBIC
16  extended Defendant a $4.5 million mortgage on The Brookdale Inn in 2007. *Id.* at 15.
17        In November 2008, Defendant refinanced the $4.5 million mortgage and borrowed an
18  additional $1.5 million for renovations of The Brookdale Inn. *Id.* SBIC approved the combined
19  $6 million loan based on several covenants, including that the loan was subject to the continued
20  satisfactory financial position of Defendant. *See* Exhibits 1–12 re Memorandum in Opposition by
21  USA as to Sanjiv Kakkar ("USA Exhibits"), Exh. 10 at 870, Dkt. No. 231. SBIC specified that
22  "[i]n the event of any decline in the financial position of [Defendant], appearance of any
23  irregularity in the account or failure to comply with terms of [the] contract," SBIC could "call-up
24  all outstanding debt without any further notice." *Id.* Defendant also had to submit his annual tax
25  returns to SBIC. *Id.* Non-compliance with any of the covenants subjected Defendant to a two-
26  percent increase in interest and a declaration of default. *Id.* at 871.

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Testimony by SBIC's employees demonstrated that having a borrower's tax return allows the bank to understand any changes in the borrower's financial position over the life of the loan. Transcript of Trial Proceedings, Vol. 4 at 116–17. Defendant's reported income of his returns influenced SBIC's decision about whether to impose higher interest or demand immediate repayment of the entire loan. *Id.* at 76–81.

Defendant gave SBIC copies of his tax returns for tax years 2007 and 2008. However, these copies differed from the returns prepared by his accountant and filed with the Internal Revenue Service ("IRS"). Defendant gave SBIC a 2007 return that inflated The Brookdale Inn's revenue by $200,000, and made the hotel appear profitable when, in fact, it had suffered a loss. *Compare* USA Exhibits, Exh. 6, *with* Exh. 7. Likewise, Defendant gave SBIC a 2008 return that inflated The Abigail Hotel's revenue by $200,000, and made the hotel appear profitable when, in fact, it had suffered a loss. *Compare* USA Exhibits, Exh. 8, *with* Exh. 9. The 2008 return given to The Abigail Hotel also inflated The Executive Inn's revenue by $700,000. *Compare* USA Exhibits, Exh. 10, *with* Exh. 11.

Defendant received $900,000 directly for work he had done on The Brookdale Inn (Defendant was given $1.5 million for renovations). Transcript of Trial Proceedings, Vol. 5 at 128–29. SBIC required that the remaining $600,000 be disbursed through a fund controller. Transcript of Trial Proceedings, Vol. 2 at 175; USA Exhibits, Exh. 12 at 871. A fund controller helps ensure the timely completion of a commercial building project and disburses funds to contractors as work is done. Transcript of Trial Proceedings, Vol. 4 at 15.

Dixieline served as the fund controller. Dixieline is an escrow company that primarily works with construction lenders. Transcript of Trial Proceedings, Vol. 5 at 31. Dixieline started working with SBIC in 2006 and became involved with the renovation of The Brookdale Inn in November 2008. *Id.* at 33. Dixieline established a fund control agreement with Defendant. *Id.* at 35. Defendant named himself the contractor for the project, which meant that Dixieline would disburse funds to Defendant for the renovation work. *Id.* at 11–12. Defendant had to submit

1    requests for payment as funds were needed for the work. *Id.* at 40. Once SBIC approved the

2    requests, the funds were wired from SBIC to Dixieland, and then from Dixieland to Defendant.

3    *Id.*

4          Defendant submitted requests for payment and supporting documentation to Dixieland on

5    six occasions between January and June 2009. *Id.* at 54–98. He asked for $100,000 each time.

6    *Id.* The supporting materials included receipts and copies of checks showing purported

7    construction expenses. *Id.* Defendant also submitted documents signed by "Francisco Arriaga,"

8    which represented that Arriaga had "received a progress payment in the sum of $100,000 for

9    labor, services, equipment, or material furnished to Sanjiv Kakkar on the job of Brookdale Inn and

10   Spa." *Id.* at 62. In response to these submissions, Dixieline disbursed over $500,000 to

11   Defendant. *Id.* at 54–98. It did not disburse the full $600,000 because SBIC diverted some funds

12   to debt service after Defendant missed his monthly payments. Transcript of Trial Proceedings,

13   Vol. 4 at 66.

14         Many of the documents that Defendant submitted to Dixieland were falsified. Arriaga was

15   a laborer who did unlicensed roof and concrete work at The Brookdale Inn in 2008 and 2009.

16   Transcript of Trial Proceedings, Vol. 7 at 7–14. Arriaga did not sign the documents attesting to

17   multiple $100,000 payments and did not receive that much money for his work. *Id.* at 22, 27, 29–

18   32. Many of the checks purportedly showing money spent on construction costs were deposited

19   back into Defendant's own accounts. Transcript of Trial Proceedings, Vol. 7 at 33–36. Other

20   checks had been altered to show a higher amount, or to show construction costs when in fact they

21   paid for things like alcohol. *Id.* at 15–20. Also, Defendant spent money he received from

22   Dixieland on non-renovation purposes, like mortgage payments for his other properties. *Id.* at 41–

23   59.

24         During closing argument, defense counsel conceded that Defendant submitted some double

25   checks to Dixieland. Transcript of Trial Proceedings, Vol. 10 at 112–13. But counsel argued

26   these "double checks" were a mistake, not fraud. *Id.* He also argued that there were innocent

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

4

explanations or shortcomings in the government's proof.

The jury returned guilty verdicts on all counts. *Id.* at 147–48.

### A. Sentencing

This Court calculated SBIC's loss on its loan for The Brookdale Inn at $3,116,729.82. Transcript of Proceedings (04/03/2017) at 57. This Court reasoned that Defendant was responsible for the entire loss because, even if he submitted falsified tax returns to SBIC *after* SBIC approved the loan, his "scheme" and "plan" was to defraud SBIC in relation to this loan. *Id.* at 53–54. SBIC approved the loan based on conditions, and it was foreseeable that not complying with those conditions would harm the bank. *Id.* at 54–55. This Court noted that the loan "would not have been continued but for [the false] information being received" from Defendant. *Id.* at 56, 60. This Court calculated that the Guidelines advisory range was 57 to 71 months, and sentenced Defendant to 48 months of imprisonment. Dkt. No. 166. The Court ordered Defendant to pay $4,208,565.36 in restitution to SBIC, which was the amount of the bank's loss plus interest. *Id.*

### B. Appeal

On appeal, Defendant argued that this Court constructively amended the SI and improperly computed economic loss both for the purposes of determining the applicable Sentencing Guidelines range and for the award of restitution. USA Exhibits, Exh. 5. The Ninth Circuit rejected Defendant's claims and affirmed his convictions. *Id.*

In an unpublished memorandum disposition, the Ninth Circuit held that there was no constructive amendment to the SI, in part because "there was ample evidence to allow a reasonable juror to find beyond a reasonable doubt that Kakkar had submitted the false tax returns to the bank in order to secure the subject loan." Exh. 5 at 2–3.

The Ninth Circuit also held that this Court "did not clearly err in determining that Kakkar's fraudulent behavior caused the loss of the entire amount of the loan less loan repayments because Kakkar's failure to provide accurate financial records prevented the bank from foreclosing while the property's value could have covered the loan amount." *Id.* at 4–5. The Ninth Circuit further

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

5

stated that this Court "did not clearly err in using the credit bid in its calculation of loss because there is no evidence in the record that the Brookdale Inn was more valuable than the credit bid." *Id.* at 5.

## II.   LEGAL STANDARD

Section 2255 authorizes a prisoner to "move the court which imposed the sentence to vacate, set aside, or correct the sentence based on a violation of federal law." 28 U.S.C. 2255(a). Relief is limited to situations where "the sentence was imposed in violation of the Constitution or laws of the United States." *Id.*; *see also United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). This motion may not be used as a second appeal. *Berry*, 624 F.3d. Accordingly, defendant is barred from re-litigating claims that have already been decided on direct appeal. *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a motion has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion.").

If error is found, then "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Following the submission of a Section 2255 motion, the court must grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* The court need not hold an evidentiary hearing where the prisoner's allegations, when viewed against the record, either do not state a claim for relief or are so palpably incredible as to warrant summary dismissal. *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel Claim

##### 1. Legal Standard

To prevail on an ineffective assistance of counsel claim, a convicted defendant must show:

1. His counsel's performance was "deficient"—his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

2. This deficient performance caused "prejudice"—the errors were so serious as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

The inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. The defendant must show both deficiency and prejudice; if an insufficient showing is made for one, the court need not consider the other. *Id.* at 697. Surmounting the *Strickland* standard is "never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

In assessing trial counsel's performance, the court applies an objective standard of reasonableness and asks, "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Review is "highly deferential"—a fair assessment of counsel's performance requires that every effort be made to eliminate the "distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Due to the difficulties inherent in this evaluation, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Defendant, thus, must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy" since "[t]here are countless ways to provide effective assistance in any given case." *Id.* Accordingly, counsel's judgments receive a "heavy measure of deference." *Id.* at 691.

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

7

## 2. Discussion

Defendant seeks to vacate his sentence on the ground of ineffective assistance of counsel, alleging that his trial counsel, Todd Leras and Eduardo Roy, failed to properly and independently investigate (1) the facts of the false statement charged in Count One; (2) the facts of the wire fraud charged in Counts Two through Seven; (3) the facts surrounding SBIC's actual loss and failed to introduce evidence on that point;[1] and (4) failed to request a specific jury instruction on wire fraud. The Court addresses each argument in turn.

### A. Investigation Regarding the False Statement Charged in Count One

Defendant's first argument, that Leras and Roy's representation was deficient because they failed to properly investigate the submission of the 2007 and 2008 tax returns, fails. Defendant argues that if counsel had properly investigated these tax returns, they would have found that Defendant did not submit his 2008 tax return to SBIC in connection with the $6 million Brookdale loan, but in connection with a separate loan that he had with SBIC for his Executive Inn Hotel loan. Mot. at 4. Defendant further contends that the additional $700,000 in income attributed to the Executive Inn in the 2008 Return was submitted at SBIC's request.

Defendant made this same claim to trial counsel in trial preparation meetings. USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 5. Defendant provided counsel with a copy of a January 2010 letter that he maintains supports his claim. *See id.* at ¶ 6 ("Mr. Kakkar provided Eduardo Roy with a copy of the January 2010 letter that Mr. Kakkar said he had given to SBIC [which referenced SBIC's request for a "pro forma Schedule C" for the Executive Inn and Abigail Hotel]. . . . Mr. Kakkar discussed the letter and income projections during trial preparation meetings at . . . [the] office in the summer of 2016.").

---

[1] As the Government notes, to the extent that Defendant uses his ineffective assistance allegations to challenge the computation and execution of his sentence, such challenges are not cognizable pursuant to 28 U.S.C. § 2255 and must instead be addressed in a separate petition for habeas corpus pursuant to 28 U.S.C. § 2241. *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984).

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255
8

1   Trial counsel reviewed and discussed Defendant's claim that SBIC asked him to include
2   the additional $700,000 in his 2008 Return.  One of the issues they discussed, and considered, was
3   how to admit the letter at trial.  USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 8.
4   The letter had no Bates number and was not included in the Government's production of SBIC
5   records.  *Id.*  Trial counsel investigated further and subpoenaed SBIC's records directly but, to the
6   best of counsel's recollection, the letter was not in that production either.  *Id.*  If it had been,
7   counsel would have used it at trial to cross-examine witnesses.

8   Trial counsel also attempted to identify the bank employee who had requested the altered
9   Schedule C from Defendant.  Mr. Leras noted that the letter, prepared by Defendant, was
10  generically addressed to "Sir or Madam," not a specific employee, even though it referenced a
11  specific conversation.  Defendant was not able to provide the names of the employees who made
12  the request.  *Id.* at ¶ 9; USA Trial Exhibits, Exh. 2 (Declaration of Eduardo Roy) at ¶ 5.  As further
13  investigation, Mr. Roy personally visited the SBIC branch office in San Jose with Defendant on
14  two occasions to try and identify and speak to the bank employees that Defendant had worked
15  with on the loan, but Mr. Roy learned that the employees had returned to India.  USA Trial
16  Exhibits, Exh. 2 (Declaration of Eduardo Roy) at ¶ 5.  Counsel and Defendant discussed the
17  possibility of traveling to India to interview the employees, but counsel did not receive
18  authorization to undertake this travel.  *Id.*

19  Because trial counsel did not have proof that SBIC received the letter, and because they
20  had no ability to identify the employee who allegedly requested the false return, trial counsel
21  determined that the only witness who could admit the letter and testify about Defendant's
22  conversation with the bank manager was Defendant himself.  USA Trial Exhibits, Exh. 1
23  (Declaration of Todd Leras) at ¶ 10; Exh. 2 (Declaration of Eduardo Roy) at ¶ 7.  Defense counsel
24  spoke with Defendant about the possibility of testifying on at least ten occasions before trial.  *Id.*
25  However, there were concerns about Defendant taking the stand, namely that he did not perform
26  well in mock cross-examination, and he could be impeached with a prior state fraud conviction.

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

9

*Id.* Counsel wanted to do a mock trial with Defendant or work with a focus group to help Defendant's testimony, but never received approval. *Id.* Given counsel's concern, counsel advised Defendant not to take the stand, which Defendant followed. *Id.* Accordingly, defense counsel had no witness who could testify about Defendant's alleged conversation with the bank employee or admit Defendant's letter at trial. USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 8; Exh. 2 (Declaration of Eduardo Roy) at ¶ 11.

   Defendant also argues that had counsel investigated, they would have found that the altered 2007 tax return was submitted to SBIC at the request of an unnamed bank manager. Mot. at 3. Like the letter, Defendant made this same claim to his counsel in trial preparation meetings. But counsel was unable to identify or interview the bank employee who had requested the 2007 tax return. USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 10; Exh. 2 (Declaration of Eduardo Roy) at ¶ 7. Again, like the letter, after thorough investigation, counsel was left with no witnesses who could testify to Defendant's conversation with the bank manager at trial.

   Defendant further argues that had counsel investigated, they would have found that the false 2007 tax return was submitted in connection with the prior $4.5 million loan on The Brookdale, and not the $6 million loan alleged in the SI. But, as the Government notes, to take this position would require defense counsel to argue that Defendant was not guilty of making a false statement as alleged in Count One, because he submitted false documents *with an earlier loan* rather than the loan named in the indictment. Opp. at 9. This strategy was rejected by trial counsel for this reason. USA Trial Exhibits, Exh. 2 (Declaration of Eduardo Roy) at ¶ 10.

   Defendant last argues that had counsel investigated, they would have found that the false tax returns were not required to keep the loan from being recalled, and that the $6 million loan was a new loan and not a refinancing loan. The Government argues that the evidence at trial showed that neither of these claims are true, and that even if they were, they are not a defense to Count One. Opp. at 9. The Court agrees. Regardless of whether it was a new or refinanced loan, and regardless of whether the returns were required to maintain the loan, the tax returns were

1  submitted for the purpose of influencing the bank.

2      Trial counsel extensively investigated Defendant's claims and formulated a trial strategy based on the evidence that was available and admissible at trial. Trial counsel consulted with Defendant on the trial strategy and had to alter trial strategy based on decisions made by Defendant. It cannot be said that counsel's trial decisions were anything but "sound trial strategy." *Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *see also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). Accordingly, Defendant has not met his burden of demonstrating deficiency. Counsel's challenged conduct is entirely reasonable given the facts of this case.

### B. Investigation Regarding the Facts of Wire Fraud Charged in Counts Two–Seven

Defendant argues that if trial counsel had investigated the wire fraud allegations in Counts Two through Seven, they would have found that the SBIC loan was an irrevocable loan which did not require Defendant to perform any construction or renovations with the funds, that Dixieline was contracted by Defendant and not SBIC, that the loaned funds were Defendant's at the point of approval, and that "drawing down the loan proceeds was at the discretion of [Defendant] only." Mot. at 8–9.

As the Government notes, this is what defense argued at trial, and trial counsel introduced much of the evidence that Defendant cites in his motion. *See* Transcript of Trial Proceedings, Vol. 6 at 27, 40 (defense counsel presenting evidence that Defendant, and not SBIC, signed a contract with Dixieline, that Defendant paid amortization costs on the full $6 million, and that Defendant accrued interest on the full $6 million).

To prepare for trial, defense counsel contacted two acquaintances who specialize in construction law to solicit their advice on this defense theory and get a recommendation on an expert who would support it. USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 15. These acquaintances "explained that fund control agreements within the construction industry do

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255
11

1 not operate that way—the funds do not belong to the loan recipient and are not disbursed solely at
2 the loan recipient's discretion." *Id.* The acquaintances "further stated that [counsel] would not
3 find an expert who would support this defense." *Id.*

4     Defendant cannot show that the decision to proceed without an expert was objectively
5 unreasonable when the facts of the case did not lend themselves to expert testimony in
6 Defendant's favor. *See United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). Because
7 counsel could not retain an expert to support this theory, and because Defendant did not take the
8 stand to testify about it, counsel could only use exhibits and testimony to argue this theory. The
9 record demonstrates that counsel argued this theory, but that the jury rejected it. Accordingly, it
10 cannot be said that counsel's performance was deficient.

### C. Investigation Regarding SBIC's Loss/Introduction of Evidence

12     Defendant argues that trial counsel provided ineffective representation by failing to
13 investigate facts that would have proved that any loss suffered by SBIC was not causally linked to
14 the alleged loan fraud. Mot. at 11. Defendant contends that The Brookdale's appraised value
15 declined for reasons unrelated to the fraud, and that SBIC overlooked a $5.5 million bid for The
16 Brookdale in favor of a $3.2 million bid.

17     Defense counsel made this argument at sentencing. While counsel did not specifically say
18 The Brookdale's appraisal value or the $5.5 million bid, counsel did note that "SBIC sold The
19 Brookdale Inn to itself" and argued that this sale did not "establish a fair market value of collateral
20 for purposes of calculating restitution." *See* Sentencing Memorandum by Sanjiv Kakkar, Dkt. No.
21 160. Trial counsel argued that the calculation in the Presentence Report failed to account for
22 insurance proceeds, and that the calculation was based on the full loan value of $6 million when
23 Defendant had only made use of $5 million. Counsel introduced evidence that SBIC had
24 unilaterally increased the loan, and evidence that SBIC would have approved the loan without the
25 fraudulent conduct, to show that SBIC's loss was not causally linked to the fraud. *Id.*

United States District Court
Northern District of California

1  This Court rejected those arguments and found that Defendant's misconduct caused the
2  loss of the entire loan amount, less loan payments.  The Ninth Circuit affirmed this calculation.
3  While this Court and the Ninth Circuit rejected defense counsel's theory, that does not mean
4  counsel gave ineffective assistance.  *See De Roche v. United States*, 337 F.2d 606, 607 (9th Cir.
5  1964) ("Requiring effective assistance of counsel obviously does not mean successful assistance
6  to be expected." (citations omitted)).

### D. Jury Instruction on Wire Fraud

Defendant argues that trial counsel was ineffective because they failed to request that the court instruct the jury that it had to find that the purpose of Defendant's alleged scheme in Counts Two through Seven was to defraud Dixieline of money or property.  Mot. at 12.  Defendant contends that this failure allowed the jury to convict him of defrauding either Dixieline *or* SBIC.

Defense counsel does not recall considering the specific instruction asserted by Defendant. USA Trial Exhibits, Exh. 1 (Declaration of Todd Leras) at ¶ 17.  But Mr. Leras noted, that if the instruction had come up, he "would not have sought [the] instruction because it contradicted [the] defense theory at trial, which was that [Defendant] may have committed fraud against SBIC, but not Dixieline because Dixieline didn't have a property interest in the money." *Id.*  Mr. Leras further noted that such an instruction would have "invited the jury to convict [Defendant] for essentially admitting to fraud." *Id.*  As an experienced litigator and criminal defense attorney, Mr. Leras believes that such an instruction would have been "poor trial strategy" because it would require the defense "to advocate one defense and then advocate a second, contradictory defense in the alternative." *Id.*  Defendant's trial counsel "made a tactical decision to align the jury instructions with [their] defense that [Defendant] did not commit wire fraud." *Id.*

"A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." *Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984).  Trial counsel's decision to not pursue the jury instruction advocated for by Defendant was reasonable and not deficient.

### E. Conclusion

Defendant failed to show that his counsels' performance at trial was deficient. This Court cannot reconsider the type of strategic decisions raised by Defendant, and to the extent these decisions are reviewable, Defendant has not shown deficiency. *See Burger v. Kemp*, 483 U.S. 776, 789 (1987) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Because Defendant cannot show deficiency, his ineffective assistance of counsel claim fails.

### B. Prosecutorial Misconduct

#### 1. Legal Standard

A motion under § 2255 may be used to attack a defendant's conviction and sentence only on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Thus, a 2255 motion may only raise constitutional issues, challenges to the district court's jurisdiction to impose the sentence, challenges to the length of the sentence, and claims that the sentence is otherwise subject to collateral attack. *Id.*

A defendant who fails to raise a claim on direct appeal procedurally defaults on that claim. *See United States v. Frady*, 456 U.S. 152, 164–67 (1982); *United States v. Johnson*, 988 F.2d 941 (9th Cir. 1993). Where a defendant has procedurally defaulted on a claim by failing to raise it on direct review, the claim may not be raised in a 2255 motion unless the defendant demonstrates (1) "cause" for the failure to raise the claim on direct review and "actual prejudice," or (2) that he is "actually innocent" of the crime. *Frady*, 456 U.S. at 162, 164. To show cause for a procedural default, the defendant must establish that "some objective factor external to the defense" prevented him from raising these claims during trial or on direct appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

14

1    The exception for "actual innocence" is a "very narrow exception" intended to correct only "fundamental miscarriage[s] of justice." *Sawyer v. Whitley*, 505 U.S. 333, 340–41 (1992). To merit relief under this narrow exception, a defendant must demonstrate "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327–28 (1995) ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" to establish actual innocence).

### 2. Discussion

Defendant's motion asserts a new claim of government misconduct. Mot. at 13–17. Specifically, Defendant alleges that the prosecution repeatedly misstated facts before the grand jury and at trial. Mot. at 14. These allegations were not raised in Defendant's direct appeal.

Defendant does not establish cause for his failure to raise this claim on appeal or prejudice from his failure to do so. He also does not assert that he ever attempted to introduce evidence about the alleged misconduct on appeal, that the "factual or legal basis for [such] a claim was not reasonably available to counsel," or that "some interference by officials" prevented him from raising the claims. *See Brown v. Allen*, 344 U.S. 443, 486 (1953). Defendant does not claim that there are any facts or theories available to him now that were not available at the time of his appeal. Defendant also fails to allege that his counsel was ineffective on appeal, or that his failure to bring a prosecutorial misconduct claim on appeal was the product of ineffective assistance. Instead, Defendant's prosecutorial misconduct claim is based on facts that were known to Defendant prior to his appeal and are based on well-established law that is neither new nor novel. Defendant thus cannot support his prosecutorial misconduct claim and has procedurally defaulted his prosecutorial misconduct claim. *See United States v. Mejia-Mesa*, 153 F.3d 925, 928 (9th Cir. 1997) (noting that defendant would have cause for procedural default if he did not discover facts about the government not complying with its *Brady* obligations until after the appeal concluded).

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

15

### C. Actual Innocence

#### 1. Legal Standard

A claim of "actual innocence," in and of itself, does not ordinarily provide a basis for overturning a conviction. To pass through the actual innocence procedural gateway of *Schlup*, the petitioner must show that "in light of all available evidence, it is more likely than not that no reasonable juror would convict him of the relevant crime." *Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007). A petitioner can present an "actual innocence" claim with a constitutional violation or can present a "freestanding" claim.

Defendant pursues a freestanding claim of actual innocence. To establish a freestanding claim of actual innocence, a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000). The petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that the evidence against him is so weak that "no reasonable juror would have convicted him." *Id.*; *see also Schlup*, 513 U.S. at 329 ("[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.").

#### 2. Discussion

##### A. Count One

Defendant first argues that he is actually innocent of Count One because the false tax returns he submitted were not "done so with any fraudulent intent but rather at the request of SBIC." Mot. at 3, 9–10. *United States v. Wilcox*, 919 F.2d 109, 111 (9th Cir. 1990) forecloses this argument. There, the defendant claimed he was entitled to a good faith defense because the documents, even if false, were submitted according to the bank's instructions. The Ninth Circuit rejected this argument and found that because the underlying statute requires "neither reliance by the bank officer nor an actual defrauding," "the *only* intent that needs to be shown is intent to influence," which the defendant's submission was designed to do. *Id.* at 112; *see also United*

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

16

1 *States v. Blumenthal*, 945 F.2d 280 (9th Cir. 1991) (rejecting the defendant's argument that he
2 lacked the requisite intent to deceive because he had the oral consent of the bank officer to submit
3 false statements); *United States v. Sarno*, 73 F.3d 1470 (9th Cir. 1995) (noting that proof of a
4 bank's reliance is not an element of § 1014 and therefore the complicity of bank officers is no
5 defense).

6 Defendant admits that he knowingly submitted altered tax return forms to the bank in
7 connection with an outstanding loan. The return influenced the bank's decisions about the loan,
8 namely whether to recall the loan or impose higher interest rates. It is irrelevant whether a bank
9 employee knew of the fraud. Under these set of facts Defendant is guilty of making a false
10 statement to a bank under § 1014.

11 Defendant next argues that although he knowingly submitted false returns to SBIC in
12 connection with a loan, he is innocent of Count One because the returns submitted do not relate to
13 the loan charged in the SI. However, the jury found beyond a reasonable doubt that Defendant
14 submitted false returns in connection with the loan charged in the SI. The Ninth Circuit affirmed
15 this finding and concluded that there is sufficient evidence "that Kakkar submitted the tax returns
16 to the bank in connection with the loan." USA Trial Exhibits, Exh. 5 at 3.

17 Defendant's motion does not provide any contrary or new evidence. Thus, he has not met
18 his burden of proving that "in light of all the evidence, it is more likely than not that no reasonable
19 juror would have convicted him." *Lorentsen*, 223 F.3d at 954. Accordingly, Defendant's actual
20 innocence claim as to Count One fails.

21 **B. Counts Two Through Seven**

22 Defendant next argues that he is innocent of the wire fraud charges because the loan
23 proceeds belonged to him, and he would not have "devised a scheme to deceive himself." Mot. at
24 10–11. Defendant pursued this same defense at trial. The jury rejected this defense, and the Ninth
25 Circuit affirmed after finding that "any rational trier of fact could have found the essential
26 elements of wire fraud beyond a reasonable doubt." Ex. 5 at 4.

27 Case No.: 5:13-cr-00736-EJD-1
28 ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

17

Defendant's motion offers no new evidence, and Defendant fails to show that given the evidence, no reasonable juror would have found him guilty. Accordingly, Defendant's actual innocence claim as to Counts Two through Seven fails.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's § 2255 motion. The Court also determines that Defendant is not entitled to an evidentiary hearing. *See* 28 U.S.C. § 2255 (evidentiary hearing not required if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief"). A judgment will follow the posting of this Order, and the Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 7, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:13-cr-00736-EJD-1
ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

18